UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RPOST HOLDINGS, INC., RPOST COMMUNICATIONS LIMITED, and RMAIL LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> DOCUSIGN, INC.; <br> AMERITRADE CORP., LLC; <br> AMERITRADE, LLC; <br> ARIBA, INC.; <br> BNY MELLON RCC, LLC; <br> CB RICHARDS ELLIS COMMERCIAL <br>   LIMITED LLC; <br> CENTURY 21 CORP.; <br> CENTURY 21 GROUP INC.; <br> CENTURY 21 FIN. SERVICES CORP.; <br> CENTURY 21 REAL ESTATE LLC; <br> CENTURY 21 REAL ESTATE SERVICES LLC; <br> CENTURY LINK LLC; <br> COLDWELL BANKER LLC; <br> COLDWELL BANKER REAL ESTATE LLC; <br> COLDWELL BANKER REAL ESTATE <br>   SERVICES LLC; <br> COLDWELL BANKER RESIDENTIAL <br>   BROKERAGE LLC; <br> COLDWELL BANKER RESIDENTIAL <br>   BROKERAGE, INC.; <br> COMCAST CORPORATION; <br> COMCAST CABLE COMMUNICATIONS, LLC; <br> COMCAST CABLE COMMUNICATIONS, INC.; <br> FIRST DATA CORP.; <br> FIRST DATA LLC; <br> FIRST DATA SERVICES LLC; <br> LENDING TREE LLC; <br> LENDING TREE HOLDING CORP.; <br> LINCOLN FINANCIAL GROUP, LLC; <br> OFFICE DEPOT, INC.; <br> REMAX CORP.; <br> RE/MAX LLC; and <br> YUM BRANDS, INC. <br><br> Defendants. | Civil Action No. 12-cv-683-JRG <br><br><br><br> Hon. Rodney Gilstrap |

# DEFENDANT DOCUSIGN, INC.'S MOTION TO DISMISS OR SEVER AND STAY CUSTOMER CLAIMS

## TABLE OF CONTENTS

I. BACKGROUND .................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 3

    A. This Court may Dismiss or Sever and Stay the Customer Claims ........................................................................................................ 4

    B. The New Defendants are Merely Peripheral and Add no Value ...................................................................................................... 5

    C. RPost Cannot Obtain a Double Recovery ........................................ 6

    D. An Injunction against DocuSign Operates as an Injunction against the Customers ............................................................................. 7

III. CONCLUSION ................................................................................................................. 7

Defendant DocuSign, Inc. ("DocuSign") respectfully moves the court to dismiss the claims recently filed by Plaintiffs RPost Holdings, Inc., RPost Communications Limited and RMail Limited (collectively "RPost") against a lengthy list of DocuSign customers. The amended complaint does not allege infringement of any patent or accuse any instrumentality not already asserted against DocuSign; it merely alleges infringement by 29 new parties based solely on their alleged use of DocuSign's services. The addition of 29 new parties to this action multiplies the proceedings greatly while providing no legal benefit to RPost, and therefore DocuSign seeks a dismissal of these new defendants without prejudice. Alternatively, DocuSign asks that they be severed from this action so that the claims against them may be stayed pending the outcome of both prior pending consolidated Civil Action No. 11-cv-00299 set for trial in August on one of the asserted patents and the present action against DocuSign on the remaining four newly asserted patents.

## I.  BACKGROUND

RPost filed its original Complaint in this action on October 25, 2012 alleging that DocuSign infringes four patents (including US patents 8,275,845; 8,224,913; 8,209,389; and 8,161,104). In a separate, earlier filed action (case No. 2:11-cv-00299), RPost alleged that DocuSign infringed a separate group of related patents (including US patents 6,182,219; 6,571,334; 7,707,624; and 7,966,372).

On February 2, 2013, RPost filed a First Amended Complaint in this action. (*See* Court Doc. 11) In the First Amended Complaint, RPost alleged that 29 new parties infringe the four patents that were previously asserted against DocuSign in this action, as well as one of the patents (number 6,182,219) that had been asserted against DocuSign in the earlier filed action. The First Amended Complaint alleges that these 29 new parties are customers of DocuSign and that they infringe the asserted patents by using the DocuSign technology as customers of DocuSign. The Amended Complaint does not allege any other acts of infringement by these 29 new defendants. (*See* Court Doc. 11 at ¶¶ 11-48)

DocuSign notes that at least some of the 29 new parties are not actually DocuSign customers. For example, some of the new parties are companies involved in the sale of real estate, and while certain independent agents who are affiliated with those companies may use the DocuSign technology, the named companies are not themselves DocuSign customers. (Moyle Dec. ¶ 4) Because there are so many new parties to this action, some of which appear to be improperly named, the First Amended Complaint will surely trigger a flurry of motions to dismiss on a variety of grounds, and will lead to voluminous discovery into the nature of the operations of each of these new defendants.

Regardless of whether the 29 new parties are properly named, not one of the new parties is in the business of making and selling any accused products. Rather, RPost alleges that all of them have infringed the asserted patents by virtue of using a service provided by DocuSign. (*See* Court Doc. 11 at ¶¶ 11-48) (alleging, for example, that the Defendants have infringed the asserted patents by using "DocuSign's Electronic Signature, eSignatures, and eSign services").

For the purposes of this motion it is important to understand the nature of the accused DocuSign service. DocuSign does not sell products or tangible items to its customers. Instead, DocuSign provides a service through which its customers must access server computers operated and controlled by DocuSign to enable documents to be signed, delivered and stored electronically. In some patent infringement actions a plaintiff may need to join a customer in order to obtain complete relief, such as when a manufacturer has shipped a large inventory of accused goods to the customer. (Moyle Dec. ¶ 3) In the present case, however, an injunction against DocuSign would also automatically operate as an injunction against DocuSign's customers because DocuSign provides a service and does not sell goods accused of infringement: DocuSign's customers cannot use the DocuSign service if DocuSign is enjoined from offering it.

Consequently, and as explained further below, there is no legal purpose for the amendment to join 29 new parties to this action. Even if RPost were to prevail at trial, it cannot obtain any greater relief by adding DocuSign customers to the action. On the other hand, the

addition of 29 parties to this action will make discovery, claim construction, trial, and all other phases of the action far more complicated and expensive. By all appearances, RPost has amended the complaint for the purpose of increasing litigation expense and attempting to damage the relationship between DocuSign and its customers in an effort to gain settlement value. There is no reason to increase the burden of the Court and parties for this purpose, and the 29 new parties should be dismissed as a result. Alternatively, they should be severed from this case in favor of a new action that is then stayed pending the outcome in both actions filed by RPost against DocuSign.

## II.   ARGUMENT

The claims asserted against the 29 new defendants should be dismissed without prejudice. Alternatively, the new defendants should be severed from this action and that case stayed. As explained below, retaining the additional defendants in this case will multiply the proceedings significantly. For example, many of the defendants will surely file motions to dismiss, motions for summary judgment, or otherwise seek relief that will not be a part of the case involving DocuSign alone. Despite having no information regarding the asserted patents or the technical details of the accused DocuSign service, these new defendants will be called upon to participate in the various noninfringement and invalidity contentions as well as other discovery proceedings. Yet the remedies in the event RPost were to prevail are no different by joining these new parties. RPost cannot obtain a double recovery in the form of damages, and an injunction against DocuSign would operate as an injunction against its customers even if they are not parties. In addition, while 29 new parties is enough to multiply the expense in the present proceeding it adds no meaningful value to RPost because it barely scratches the surface of DocuSign's customer base. If it were genuinely important to add DocuSign's customers to the present action then RPost would have added thousands of new parties instead of the 29 who are currently named. In sum, joining the new parties is expensive, inefficient and wasteful, yet

provides no legal benefit whatsoever. Under the circumstances, the new defendants should be dismissed.

### A.  THIS COURT MAY DISMISS OR SEVER AND STAY THE CUSTOMER CLAIMS

A district court has broad discretion to control and manage its docket, including with respect to permitting the filing of pleadings. *Enlow v. Tishomingo County*, 962 F.2d 501, 507 (5th Cir. 1992). Likewise, pursuant to Rule 21, the Court may at any time, on just terms, add or drop a party, or may sever any claim against a party. Fed. R. Civ. P. 21.

In the context of litigation against a manufacturer and its customers, the "customer suit" exception provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). While the customer suit exception primarily addresses venue determinations with respect to separate actions filed against customers and against a manufacturer, the doctrine has sometimes been applied to motions to stay actions against customer defendants. *See, e.g., In re Papst Licensing*, 767 F.Supp.2d 1, 10 (D.D.C. 2011). The customer suit exception recognizes that actions against a party's customers are often peripheral at best and customers are commonly joined solely to create venue advantages or provide other procedural benefits.

In the course of managing its docket, a court may sever an action involving both customers and a manufacturer, staying the customer case until the manufacturer case is resolved. For example, in *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. September 1, 2010), claims against Kodak were severed from claims against Kodak's customers so that the Kodak claims could be transferred to another district where a redundant action was pending. Once severed, the claims against the customers were stayed pending the outcome of the action against Kodak. In the course of evaluating the motion to sever and stay, the court observed that the customers were peripheral at best and joined to support venue. Notably, the customers named in the action represented less than one half of

one percent of the customer base, and all were located in the Northern District of Illinois. The customers also had nothing substantive to offer to the infringement action because as customers they "likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's Stoccato product infringes." *Id*. at *9. Thus, because the customers were peripheral, minimal, and added to support venue, claims against them were severed and stayed pending the outcome of the case against the manufacturer Kodak.

This Court has also severed claims against customers from claims against a manufacturer so that the customer claims can await an earlier adjudication with respect to the manufacturer. In *Keranos, LLC v. Analog Devices, Inc*., Case No. 2:10-cv-00207-MHS (E.D. Tex. January 10, 2013), the Court organized the defendants into a group of manufacturers and a group of customers. In an effort to conserve judicial resources, the claims against the two groups were severed into two new cases and given separate case numbers. Then the customer group was set for trial at a date that lagged well behind the manufacturers group. Although the customer case was delayed, rather than stayed, the court explained that the customer defendant claims were already three years old at the time of the request. *Id*. at p. 4. At this early stage in the present case, a stay of the customer claims is more appropriate.

For the reasons below, this Court should exercise its discretion to control its docket by dismissing the alleged DocuSign customers or, alternatively, severing claims against them and staying the action pending the outcome of the case against DocuSign.

B.   **THE NEW DEFENDANTS ARE MERELY PERIPHERAL AND ADD NO VALUE**

While the addition of 29 defendants will surely increase cost and complexity, it adds nothing to the resolution of the case. The additional defendants are alleged to be customers of DocuSign, and none of them participated in any way in the design or development of the DocuSign technology. As customers, none of them have access to the DocuSign software in any way that would allow them to independently evaluate the allegations of patent infringement.

Plainly, none of the new defendants have any documents or witnesses that are relevant to the question of infringement. (Moyle Dec. ¶ 4)

To the extent any of the defendants is in the possession of discoverable information at all it is surely redundant to evidence available through DocuSign. Moreover, as alleged residents of this judicial district they are subject to subpoena so that RPost can seek any such discovery from them as nonparties just as readily as parties.

This also is not a case in which an action against customers is necessary for RPost to obtain complete relief. An action against customers may make sense where customers are in the possession of inventory and the number of customers is sufficiently manageable such that all of them can be joined. In the present case, however, there is no inventory and therefore no need to join the customers in order to prevent the sale of the inventory. In addition, RPost has joined such a small subset of DocuSign's customers that there is plainly no genuine legal value. DocuSign currently has more than 55,000 customers and 29 million users for its services. (Moyle Dec. ¶ 5) Filing an amended complaint joining such a small subset of DocuSign customers confirms that the reason for the joinder has nothing to do with seeking a remedy under patent law.

## C.  RPOST CANNOT OBTAIN A DOUBLE RECOVERY

The addition of numerous defendants does not enable RPost to recover additional damages. To the contrary, the infringement by a company and its customers is a single act by alleged joint tortfeasors that entitles the plaintiff to a single recovery. Once the patentee "has already received actual damages for the manufacture and sale of infringing devices which explicitly were a measure of the royalty for full rights in the patent," the patentee may not collect again from an additional defendant. *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 866 (Fed. Cir. 2006), *cert denied*, 127 S. Ct. 582, 166 L. Ed. 2d 429 (2006). While each joint tortfeasor is liable for the full amount of damages, the amount of damages is limited to "a full single recovery." *Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). By joining additional

customer defendants to this action, RPost has not affected the potential magnitude of any damages award in any way. Assuming RPost were to prevail at trial, its potential damages is exactly the same regardless of whether the customers are joined in the action.

**D.  AN INJUNCTION AGAINST DOCUSIGN OPERATES AS AN INJUNCTION AGAINST THE CUSTOMERS**

While a patentee is permitted only a single recovery for an act of infringement, it can nonetheless pursue separate actions against customers to seek an injunction. In this case, however, there is no need for an action against customers in order to enjoin them, and the joinder of only 29 defendants is ineffective for that purpose anyway.

As described above, DocuSign does not make products that it sells to its customers for resale or independent use by the customers. Instead, DocuSign provides a service through which the customers must access computers controlled by DocuSign to perform electronic signature, delivery and storage services. In the event the Court were to enjoin DocuSign from some aspect of its services, that injunction would necessarily prevent DocuSign's customers from using the enjoined DocuSign service. (Moyle Dec. ¶ 3) As the First Amended Complaint makes clear, the 29 new defendants do not operate their own service, but instead are accused of infringing patents by using the DocuSign service. Consequently, an injunction against DocuSign would effectively amount to an injunction against the other defendants as well and there is no further relief that would justify the increase in complexity by joining the 29 new defendants.

### III.  CONCLUSION

Given the significant increase in complexity, the lack of any evidentiary value, the inability to affect the damages award, and the ineffectiveness of an injunction, the obvious question is why RPost would join 29 additional defendants. Clearly, the purpose of the amendment was solely to cause a rift between DocuSign and its customers in order to add business pressure that might be used to RPost's advantage in settlement discussions. The joinder of additional parties for this purpose is improper.

Consistent with the Court's broad authority to control its docket and the joinder of parties, the additional 29 defendants in the First Amended Complaint should be dismissed without prejudice. Alternatively, the new defendants should be severed from the current action with the severed action involving the new defendants being stayed pending the outcome of this action.

DATED this 8th day of February, 2013.

/s/ David A. Lowe
David A. Lowe, (Admitted *Pro Hac Vice*)
LOWE GRAHAM JONES^PLLC
701 Fifth Avenue, Suite 4800
Seattle, WA 98104
T: 206.381.3300
Lowe@LoweGrahamJones.com

Jose C. Villarreal, Texas State Bar 24003113
WILSON SONSINI GOODRICH & ROSATI PC
900 South Capital of Texas Highway, Fifth Floor
Austin, TX 78746
T: 512.338.5400
jvillarreal@wsgr.com

Attorneys for Defendant DocuSign, Inc.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was electronically filed through the CM/ECF system on February 8, 2013, which will provide email notification to counsel of record listed below:

        Lewis E Hudnell, III
        COLVIN HUDNELL
        375 Park Avenue Suite 2607
        New York, NY 10152
        T: 347.855.4772
        F: 347.772.3034
        lewis@colvinhudnell.com

        Winston O. Huff
        NAVARO HUFF$^{PLLC}$
        302 N. Market Street, Suite 450
        Dallas, TX 75202
        T: 204.749.1220
        F: 204.749.1223
        whuff@navarrohuff.com

        s/ Caitlin Blazier Kavanagh